IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 





NO. AP-75,383
 





EX PARTE GILBERT AMEZQUITA, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


 FROM HARRIS COUNTY





 Hervey, J., filed a dissenting opinion in which Keller, PJ., Meyers and Keasler,
JJ., joined.


DISSENTING OPINION 



 I respectfully dissent. The Court decides that applicant is entitled to habeas corpus relief on
an ineffective assistance of counsel claim because his retained trial counsel did not discover that
there is a reasonable probability that another person, Alonzo Gilbert Guerrero, committed the
aggravated assault for which applicant was convicted. See generally Strickland v. Washington, 466
U.S. 668 (1984).

 Evidence was presented at applicant's trial that the victim of the aggravated assault knew
applicant. The victim worked at a plumbing company owned by her father. Applicant was a
plumbing company employee in charge of the company's tool room. The victim and applicant had
a heated argument after which applicant no longer worked at the plumbing company. Two days
later, on February 6, 1998, the victim was going to her car to get her cell phone when she was
attacked and beaten beyond recognition in the plumbing company tool room. She was in a coma for
ten days. When she came out of the coma, she initially could not remember who assaulted her. 
About two weeks after the assault, the victim identified applicant as her attacker by whispering the
name "Gilbert" when the police asked her who assaulted her. She also testified at applicant's trial
that applicant was the one who assaulted her. (1) Applicant's trial counsel cross-examined her
extensively on her initial inability to remember who assaulted her. (2)

 Applicant's habeas corpus application raised several ineffective assistance of counsel claims. 
One of these claims is that applicant's trial lawyer was ineffective because he failed to investigate
the victim's cell phone records which applicant alleges would have led to the discovery that another
plumbing company employee (Guerrero) traded the victim's cell phone to a drug-dealer named
Wilder after the assault. Applicant further claimed that Guerrero may have had a motive and an
opportunity to harm the victim on the day of the assault. (3) The convicting court recommended
granting applicant relief on this ineffective assistance of counsel claim and made findings adverse
to applicant on his other ineffective assistance of counsel claims. In support of its recommendation
to grant applicant relief, the convicting court found that "Wilder received the [victim's] cell phone
from [Guerrero] some time after the commission of the offense in the primary case." (4)

 This Court determines that Guerrero's possession of the victim's cell phone after the assault
does not, standing alone, justify granting relief on applicant's ineffective assistance of counsel claim. 
The Court frames the dispositive issue as a very narrow one, which is whether the evidence supports
a finding that the victim's cell phone was taken by her attacker. See Ex parte Amezquita, S.W.3d 
 , slip op. at 8 (Tex.Cr.App. No. AP-75,383, delivered this date) (Court "could express confidence
in the outcome of applicant's trial on a habeas record showing that there was no evidence showing
that the cell phone was taken by [the victim's] attacker").

 Applicant arguably would be entitled to habeas corpus relief if the record supported a finding
that the victim's cell phone was taken by her attacker. (5) It is significant, however, that, despite
requesting numerous findings, applicant did not request a finding that the victim's cell phone was
taken by her attacker. (6) The convicting court also did not make a finding that the victim's cell phone
was taken by her attacker. Rather, the convicting court found that the victim "did not exactly
remember what happened to her cellular phone." This finding is apparently based on the trial
prosecutor's post-conviction affidavit which states:

 Prior to trial, I was aware of the complainant's missing cellular phone based on the
information in the police offense report. My review of the police offense report
revealed that Sergeant Wilbur Robinson obtained the records of the complainant's
cellular phone usage approximately one month after the date of the offense. I learned
that his investigation included calling many of the phone numbers that were called
from the cellular phone on the days following the offense. I also assisted in calling
some of the phone numbers called from the cellular phone after the assault took
place. I cannot recall which phone numbers I called but do recall that Sergeant
Robinson provided me a copy of the phone records. I specifically remember that
neither Sergeant Robinson nor I ever uncovered any exculpatory or inculpatory
evidence from the investigation of the cellular phone records. Regardless of the
investigation conducted by Sergeant Robinson and myself, the complainant did not
exactly remember what happened to her cellular phone. Furthermore, the police
offense report reflects the possibility that the complainant's cellular phone was
stolen. During trial, the complainant testified that she was going to get her cell
phone when she was attacked by [applicant] and that the complainant did not
remember whether she actually got her cell phone or not.


(Emphasis supplied).


 This Court nevertheless decides that "reasonable deductions" from the evidence show that
the victim's cell phone was taken by her attacker. See Amezquita, slip op. at 8 ("making reasonable
deductions, the evidence does show that the complainant's cell phone was taken by her attacker")
(emphasis in original). The Court apparently decides that one may reasonably deduce this from the
evidence that Guerrero had the victim's cell phone "shortly after" the assault and that he had a
motive and an opportunity to harm the victim on the day of the assault. See id.

 But, the evidence from the habeas hearing shows, and the convicting court found, only that
Guerrero had the victim's cell phone "some time" after the assault when he traded it to Wilder for
drugs. (7) It is not reasonable to deduce from this that the victim's cell phone was taken by her attacker
without some evidence showing that the victim had her cell phone at the time of the assault and that
her cell phone was lost during the assault. The habeas record contains no such evidence. The
evidence actually indicates that the victim did not even have her cell phone when she was attacked
as indicated by the trial prosecutor's post-conviction affidavit. It is noteworthy that applicant's direct
appeal brief also asserts that the victim "was on her way to retrieve her cell phone out of her car
when she stopped and looked inside the tool room, wherein she was immediately attacked." 
(Emphasis supplied). 

 In addition, there is no evidence to support a finding that Guerrero was even at the
plumbing company at the time of the assault and, therefore, had an opportunity to assault the
victim. It is significant that the convicting court did not adopt the following finding that applicant
requested.

 24. On the sound track (of a crime scene police video), the [victim's] brother, Faurice
Bingham, can be a [sic] heard telling the officer that a Mexican male named
[Guerrero] came in that morning to get a paycheck and was told the check wasn't
ready.[ (8)] Mr. Bingham said that the other Hispanic employee departed the office
angry about the same time [the victim] left the office. (Hrg. II, Vol. II, 93, ff.)


 Applicant has not made the crime scene police video a part of the habeas record. Thus, there
is nothing in this habeas record to support applicant's requested finding. And, in support of his
requested finding (Hrg. II, Vol. II, 93, ff.), applicant actually relies on the direct examination of the
victim's father by applicant's writ counsel. This portion of the habeas record reflects that applicant's
writ counsel unsuccessfully tried to establish through the victim's father that Guerrero may have
been at the plumbing company trying to get paid for a damaged windshield. No mention whatsoever
was made that Guerrero was at the plumbing company around the time of the assault trying to collect
a paycheck.

 Q. [APPLICANT'S WRIT COUNSEL]: Okay. Now, do you remember an employee
who was trying to get paid for a door that fell on his car and injured and broke his
windshield? Do you recall that?


 [THE STATE]: Objection, unless it's related to [applicant] or Guerrero.


 [APPLICANT'S WRIT COUNSEL]: We believe that Guerrero was trying to get paid
for car damage.

* * *

 [APPLICANT'S WRIT COUNSEL]: Do you recall?


 A. [VICTIM'S FATHER]: Recall what?


 Q. An employee trying to get paid back for damages to his car about the time that
[the victim] got beat up?


 A. No. I don't recall.


 This record contains no evidence that the victim's cell phone was taken by her attacker or that
she even had her cell phone during the attack. And, other than unsupported-by-the-record assertions
of applicant's writ counsel, there is nothing in the record to show that Guerrero was even at the
plumbing company at the time of the assault (9) with a not-getting-his-paycheck motive to harm the
victim. (10)

 The victim knew applicant and identified him as her attacker by name and in person. 
She has not recanted her testimony. I would decide that applicant has not sustained his burden
of establishing his right to habeas corpus relief. I respectfully dissent.

 Hervey, J.

Filed: November 22, 2006

Publish
1. The victim testified at applicant's trial that she heard a noise in the tool room. When she
went inside the tool room to investigate, she saw applicant and asked him what he was doing there. 
Applicant attacked her hitting her in the face and head at least ten times before she lost
consciousness.
2. The evidence also shows that applicant was one of only a few persons who had a key to the
tool room. Applicant claimed at trial that he no longer had this key when the assault occurred. 
Guerrero never had a key to the tool room. The evidence also shows that, after the assault, the
victim's family provided the police with the names of three possible suspects one of whom was
applicant. Guerrero was not one of these named suspects.
3. It was alleged that the victim's brother had warned Guerrero shortly before the assault not
to harass the victim and that, on the day of the assault, Guerrero was at the plumbing company and
was very angry because his paycheck was not ready.
4. The evidence shows that Guerrero traded the victim's cell phone to Wilder for drugs "some
time" after the assault. The evidence does not otherwise directly show how or when Guerrero
obtained the victim's cell phone.
5. This is so because it could be difficult to express confidence in the outcome of applicant's
trial on a habeas record showing that, "some time" after the assault, another plumbing company
employee (Guerrero), with a violent past and a motive and an opportunity to harm the victim, had
the victim's cell phone that the evidence shows was taken by her attacker. See Strickland, 466 U.S.
at 694.
6. Applicant's original habeas corpus application asserted, "[a]t the time, [the victim] was
attacked, she had a cell phone. It was stolen by her attacker." However, in applicant's first amended
habeas corpus application, the allegation changed to "[t]he complaining witness possessed a cellular
phone that was stolen during or immediately after the attack." In a supplemental habeas application,
the allegation became, "Guerrero who was identified by a witness as the person who was the source
of the complainant's stolen cell phone." It would, therefore, appear that applicant's latest pleading
did not even allege that the victim's cell phone was "stolen by her attacker."
7. Wilder testified that he could not recall the date when he received the victim's cell phone
from Guerrero. Wilder did recall that it was "almost nighttime" at about 8:00 p.m. when he received
the cell phone. Allen testified that she was at Wilder's apartment at about 10:00 p.m. on February
8th (two days after the assault) when Wilder received the victim's cell phone from Guerrero.

 Wilder did testify that 713-643-6783 was his partner Booby's number (applicant presented
no other evidence that this number actually belonged to someone Wilder knew), and the victim's cell
phone records do reflect a call made from her cell phone to this number at 2:14 p.m. on February 6th. 
However, none of this testimony proves that the victim's cell phone was taken by her attacker and
none of this disputes the victim's identification of applicant as her attacker.
8. Applicant's writ counsel did not call the victim's brother to testify at the habeas hearing.
9. It is, therefore, irrelevant that the victim's brother may have warned Guerrero shortly before
the assault not to harass the victim.
10. The record does not support the assertion on page eight of the Court's opinion that Guerrero
"was at the plumbing business the day of the assault." See Amezquita, slip op. at 8. Deductions
cannot reasonably be made from assertions that the record does not support.